Joseph FRAZIER, Petitioner,

v.

Walter KELLY, Superintendent, Attica Correctional Facility, Respondent.

No. 98–CV–6049FE.

United States District Court, W.D. New York.

Nov. 18, 1999.

Joseph Frazier, Attica, NY, pro se.

Howard Broder, Rochester, NY, for Joseph Frazier, plaintiff.

Donna Milling, Erie County District Attorney's Office, Buffalo, NY, for Walter R. Kelly, defendant.

## DECISION AND ORDER

FELDMAN, District Judge.

### Preliminary Statement

Petitioner Joseph Frazier (hereinafter "Frazier"), petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this matter by the undersigned. For the reasons set forth below, Frazier's petition for a writ of habeas corpus is **denied.**

### Factual Background

On September 12, 1995, following a jury trial in Erie County Court, Frazier was found guilty of Burglary in the First Degree. The charges against Frazier arose from allegations that Frazier and co-defendant Timothy Brady (hereinafter "Brady") burglarized the home of victim Cynthia Baldi (hereinafter "Baldi") on October 13, 1993. Prior to trial, Brady entered a plea of guilty and agreed to cooperate with the prosecution. Both Brady and Baldi testified against Frazier at his trial.

Frazier was tried twice. The first trial ended in a deadlocked jury. In the second trial, the jury rejected Frazier's alibi defense and he was convicted on all counts. Frazier was sentenced as a second felony offender to a term of ten to twenty years incarceration and is currently in the custody of the State of New York. The Fourth Department of the Appellate Division affirmed Frazier's conviction on direct appeal. *People v. Frazier*, 233 A.D.2d 896, 649 N.Y.S.2d 542 (4th Dep't 1996). At both his trial and on his direct appeal, Frazier was represented by attorney Robert Boreanaz, Esq. (hereinafter "Boreanaz").

On December 4, 1997, Frazier, utilizing new counsel, filed a Motion for a Writ of Coram Nobis with the Appellate Division Fourth Department. The sole basis for the coram nobis application was Frazier's allegation that Boreanaz had an actual conflict of interest in representing Frazier and that the trial court's failure to probe or inquire into the conflict was *per se* reversible error. In seeking the writ, Frazier argued that had the trial judge's conduct in dealing with the claimed conflict been raised as an issue on his direct appeal, his

conviction would have been reversed. Thus, according to Frazier, the failure of Boreanaz to raise the conflict issue in his direct appeal denied him the effective assistance of appellate counsel. The specific relief sought in Frazier's coram nobis application was to vacate the Appellate Division's Order affirming his conviction and allow Frazier to file a new appeal along with a supplemental record on appeal to be considered *de novo* by the Fourth Department.

The allegations in Frazier's coram nobis application are, in sum and substance, identical to the constitutional violations alleged by Frazier in the instant habeas petition. The claimed conflict of interest arises from the fact that a member of Boreanaz's law firm also represented an individual identified by Brady as someone who aided he and Frazier in the burglary of Baldi's home. Brady testified that David Latona (hereinafter "Latona") assisted their burglary plans by "setting up Baldi" and thereafter driving him and Frazier to and from Baldi's residence. Latona did not participate in the actual burglary, but instead, waited in his car which he parked on a corner near Baldi's residence. Criminal charges were never filed against Latona regarding his alleged involvement in the Baldi burglary.

Prior to the first trial, Boreanaz disclosed to the trial judge and the prosecutor that an attorney in his law office had represented Latona. Boreanaz informed the court that based "on my investigation [I] don't see there is a conflict that exists now." Boreanaz told the court that Latona was not an "integral part" of the crime or whether his client "participated in the crime" and that it was not necessary for him to impeach Latona's credibility at trial. Finally, Boreanaz told the court that he did not intend on calling Latona as a witness, but if Latona "becomes a witness, then we certainly have a problem." The

court agreed with Boreanaz, stating: "Well if he becomes a witness he's going to have a problem. Up until then, I don't think you have a problem."

Prior to the second trial, Boreanaz again addressed the court about "the Latona issue with respect to prior representation by Mr. Greenman [a member of Boreanaz's firm]." In response, the trial judge again stated that "if he [Latona] is called then there is going to be a conflict." Neither the court, the prosecutor, Boreanaz or Frazier engaged in any further inquiry regarding the claimed conflict. Latona was never called as a witness at either of Frazier's trials.

■ On February 4, 1998, the Appellate Division denied without opinion Frazier's coram nobis writ. *People v. Frazier,* 247 A.D.2d 942, 670 N.Y.S.2d 649 (4th Dep't. 1998). A week later, on February 11, 1998, Frazier filed the instant habeas corpus petition alleging solely ineffective assistance of appellate counsel in violation of his Sixth Amendment rights. The Respondent agrees that the issue raised in the habeas petition has been exhausted in the New York State Courts.[1]

### Discussion

Like his application for a writ of coram nobis, Frazier's habeas corpus petition is limited to a single issue: whether the failure of Boreanaz to raise the claimed conflict in his appellate brief violated Frazier's Sixth Amendment right to the effective assistance of appellate counsel. According to Frazier, New York law requires a trial judge confronted with an alleged conflict of interest to inquire about the conflict to ensure that "the defendant's decision to proceed with his attorney is an informed decision." *People v. Gomberg,* 38 N.Y.2d 307, 313–14, 379 N.Y.S.2d 769, 342 N.E.2d 550 (1975) ("What is required is that when two or more defendants are represented

---

1. No appeal lies from denial of motion for a writ of error coram nobis issued by the Appellate Division. *People v. Bachert,* 69 N.Y.2d 593, 596, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987).

by the same attorney, the trial court ascertain, on the record, whether each defendant has an awareness of the potential risks involved in that course and has knowingly chosen it"); *People v. Lombardo,* 61 N.Y.2d 97, 102, 472 N.Y.S.2d 589, 460 N.E.2d 1074 (1984) (*Gomberg* inquiry appropriate where defense counsel previously represented prosecution's "chief witness"). Because the *Gomberg* inquiry is required in conflict cases, Frazier argues that had Boreanaz raised the issue on appeal, reversal of his conviction would certainly have resulted.

█ It is true that the failure to raise a meritorious argument based on purely *state* law may form the basis of a *federal* habeas petition alleging ineffective assistance of appellate counsel. "The claim whose omission forms the basis of an ineffective assistance claim may be either a federal-law or state-law claim, so long as the 'failure to raise the state . . . claim fell outside the wide range of professionally competent assistance.'" *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994) (quoting *Claudio v. Scully,* 982 F.2d 798, 805 (2d Cir.1992)). Regardless of whether the neglected appellate issue is based on federal or state law, the burden is clearly on Frazier to show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.*

### The Merits of the Appellate Conflict Issue

█ *1. Merits under New York State Law:* Based on the record before the Court, Frazier's argument that Boreanaz's failure to include the "conflict" issue in his brief on appeal establishes constitutionally inadequate adequate counsel suffers from several flaws. First, Frazier's argument

assumes that Boreanaz suffered from an actual or potential conflict of interest, an assumption not borne out by the record before this Court. This was not a case where Boreanaz was simultaneously representing co-defendants. *See e.g. People v. Gomberg,* 38 N.Y.2d at 312, 379 N.Y.S.2d 769, 342 N.E.2d 550 (right to counsel may be impaired where lawyer simultaneously represents conflicting interests of multiple defendants). Nor was Boreanaz representing Frazier and a prosecution witness. *See, e.g., People v. Lombardo,* 61 N.Y.2d at 102, 472 N.Y.S.2d 589, 460 N.E.2d 1074 (potential conflict arises when lawyer represents defendant and chief prosecution witness). In the aforementioned situations, a potential conflict of interest worthy of enhanced judicial scrutiny has occurred.

█ Here, however, the record simply reflected that a member of Boreanaz's law firm had, at some point in time, represented an individual who was not charged with participating in the relevant offense and who was not going to be either a prosecution or defense witness. Further, the trial court was notified, in the presence of both the district attorney and the defendant, that defense counsel had "investigated" the matter and had determined that there was no existing conflict. The trial judge had the right to rely upon counsel's representations. *See People v. Gomberg,* 38 N.Y.2d at 314, 379 N.Y.S.2d 769, 342 N.E.2d 550 (given that it may be assumed that defense counsel will not deliberately violate the Code of Professional Responsibility, court may appropriately "place great weight upon counsel's representation that there is no conflict" of interest).

█ Put simply, the record before this Court fails to establish that Boreanaz operated under an actual or potential conflict of interest.[2] Moreover, at oral argument,

---

2. The cases relied on by petitioner in his habeas brief are factually distinguishable and do not support a determination that Boreanaz operated under an actual or potential conflict here. *People v. Ortiz,* 76 N.Y.2d 652, 563 N.Y.S.2d 20, 564 N.E.2d 630 (1990) (during trial, former client of defense counsel confessed that he, not defendant, committed offenses which defendant was charged); *People v. Gomberg,* 38 N.Y.2d 307, 379 N.Y.S.2d 769, 342 N.E.2d 550 (1975) (simultaneous repre-

petitioner's counsel specifically repudiated any need for Frazier to establish through discovery or other fact-finding hearing, the nature or extent of Boreanaz's law firm's relationship and representation of Latona.[3] Frazier's hypothesis that had Latona been interviewed by the "defense team," he would have provided evidence favorable to the defense is pure speculation and not substantive evidence of a potential conflict. "Simply because an attorney previously represented a possible co-conspirator or a potential witness creates no conflict of interest in and of itself." *Hornick v. United States*, 891 F.Supp. 72, 74 (N.D.N.Y.1995). *See People v. Perez*, 70 N.Y.2d 773, 521 N.Y.S.2d 215, 515 N.E.2d 901 (1987) (*Gomberg* inquiry not required where record revealed only an indirect and distinctly remote possibility of conflict); *United States v. Saccoccia*, 58 F.3d 754, 772 (1st Cir.1995) *cert. denied*, 517 U.S. 1105, 116 S.Ct. 1322, 134 L.Ed.2d 474 (1996); (defense counsel's representation of an acquitted co-defendant did not create a conflict based on defendant's unfounded speculation that the co-defendant "could have been a material witness" at his trial).

Even assuming *arguendo* that a potential conflict of interest sufficient to require the trial judge to conduct a *Gomberg* inquiry existed, Frazier still has failed to demonstrate on this record that he was denied effective assistance of appellate counsel. The essence of Frazier's argument is that the failure of the trial judge to engage Frazier in a colloquy regarding the alleged Latona conflict was an error so significant that "reversal [of his conviction] would have been required" under New York law had the issue been raised on appeal.

■ The law in New York is clear, however, that a *Gomberg* violation does not necessarily constitute reversible error. "[T]here exists no compelling reason to adopt a rule which would automatically equate the trial court's failure to undertake proper precautionary measures with an error of constitutional magnitude requiring reversal in every instance." *People v. Macerola*, 47 N.Y.2d 257, 264, 417 N.Y.S.2d 908, 391 N.E.2d 990 (1979) (failure to make *Gomberg* inquiry regarding joint representation does not alone deny defendant right to effective assistance of counsel). *See People v. Cruz*, 63 N.Y.2d 848, 849, 482 N.Y.S.2d 259, 472 N.E.2d 35 (1984) (failure to conduct *Gomberg* inquiry

---

sentation of co-defendants at trial); *People v. Macerola*, 47 N.Y.2d 257, 417 N.Y.S.2d 908, 391 N.E.2d 990 (1979) (same); *People v. Lombardo*, 61 N.Y.2d 97, 472 N.Y.S.2d 589, 460 N.E.2d 1074 (1984) (representing defendant and People's chief witness); *People v. McDonald*, 68 N.Y.2d 1, 505 N.Y.S.2d 824, 496 N.E.2d 844 (1986) (representing defendant and victim); *People v. Wandell*, 75 N.Y.2d 951, 555 N.Y.S.2d 686, 554 N.E.2d 1274 (1990) (representing defendant and People's chief witness); *People v. Mattison*, 67 N.Y.2d 462, 503 N.Y.S.2d 709, 494 N.E.2d 1374 (1986), *cert. denied*, 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 575 (1986) (defense counsel law firm representing chief prosecution witness); *People v. Price*, 163 A.D.2d 915, 559 N.Y.S.2d 66 (4th Dep't 1990) (representing defendant and chief prosecution witness); *People v. Jordan*, 190 A.D.2d 990, 593 N.Y.S.2d 381 (1993) (representing defendant and no-billed testifying co-conspirator).

**3.** Frazier has chosen to litigate the alleged conflict issue via a puzzling and awkward procedural route. Despite the fact that the gravamen of his allegations concern whether Boreanaz labored under a conflict *at trial*, Frazier has *not* sought post-conviction relief alleging ineffective assistance of trial counsel. Such a claim could have been properly brought pursuant to a collateral attack pursuant to section 440.10 of New York's Criminal Procedural Law. *See People v. Brown*, 45 N.Y.2d 852, 853–54, 410 N.Y.S.2d 287, 382 N.E.2d 1149 (1978) ("in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of [trial] counsel be bottomed on an evidentiary exploration by collateral or postconviction proceeding brought under CPL 440.10"). While the respondent has not raised an exhaustion argument with respect to the instant habeas petition, at oral argument this Court expressed concern over the appropriateness of using a coram nobis petition alleging ineffective assistance of appellate counsel to gain federal habeas review of a claim in which the underlying allegations (whether trial counsel labored under a conflict of interest) are clearly unexhausted. *See Ehinger v. Miller*, 928 F.Supp. 291 (S.D.N.Y.1996).

not enough to establish right to new trial). As New York's Court of Appeals has explained:

> In that a conflict may never in fact arise, a defendant urging that a conviction should be overturned on account of counsel's relationship with a former client must do more than show a substantial possibility that defendant's interests potentially conflicted with those of the lawyer's former client. In order to prevail on such a claim of ineffective assistance of counsel, defendant must show that "the conduct of his defense was in fact affected by the operation of the conflict of interest," or that the conflict "operated on" the representation. (*People v. Alicea*, 61 N.Y.2d at 31, 471 N.Y.S.2d 68, 459 N.E.2d 177). We have, alternatively, phrased this requirement as one that the potential conflict [must] have borne a substantial relation to the conduct of the defense. (*People v. Recupero*, 73 N.Y.2d 877, 879, 538 N.Y.S.2d 234, 535 N.E.2d 287).

*People v. Ortiz*, 76 N.Y.2d 652, 656–57, 563 N.Y.S.2d 20, 564 N.E.2d 630 (1990).

■ Frazier's habeas claim appears to "rest[ ] on the erroneous assumption that any possibility of conflict is sufficient to meet the burden of establishing significance." *People v. Recupero*, 73 N.Y.2d at 879, 538 N.Y.S.2d 234, 535 N.E.2d 287. The "possibility" that Latona's relationship with Boreanaz's law firm created a conflict for Frazier is not enough. Assuming a potential conflict existed, Frazier is not entitled to habeas relief unless he can demonstrate that the potential conflict bore such a "substantial relation to the conduct of his defense" that Boreanaz's failure to include the issue on appeal denied him the effective assistance of appellate counsel. Based on the record before the Court, Frazier's showing falls far short of what is required.

For example, Frazier claims that Latona "possessed crucial information," but fails to describe what that crucial information was or how it would have assisted his defense. Indeed, that Latona was a willing "lookout driver" while Frazier and Brady allegedly committed the burglary hardly suggests that Latona would have been a witness favorable to the defense. Moreover, because the prosecution based their case against Frazier on the testimony of the victim (Baldi) and the cooperating co-defendant (Brady), Latona never testified at trial. Thus, whatever the relationship between Latona and Boreanaz's law firm, defense counsel was never put into a position where he had to question a client of his law firm. *See People v. Gonzalez*, 180 A.D.2d 816, 817, 580 N.Y.S.2d 414 (2d Dep't 1992) (any potential conflict arising from defense counsel's representation of defendant and potential witness "effectively eliminated" by court ruling that witness could not testify).

Nor is there any evidence that the potential conflict "operated" on the presentation of Frazier's defense at trial. Frazier pursued an alibi defense at trial, calling numerous witnesses in an attempt to demonstrate that Frazier was with them at times he was alleged to have been planning and executing the burglary. It is difficult to conceive of how any potential conflict involving Latona affected the conduct of Frazier's defense. Frazier has not identified any "different theories" or alternative "tactics that should have been pursued" but were not because of the alleged conflict. Conjecture over what Latona *might* have testified to at trial simply does not meet the standard established by the New York courts. *See e.g. People v. Butts*, 254 A.D.2d 823, 680 N.Y.S.2d 761 (4th Dep't.1998) (defense counsel's vigorous representation of defendant demonstrated that his conduct was not adversely effected by previous representation of a prosecution witness); *People v. Rocco*, 229 A.D.2d 599, 646 N.Y.S.2d 518 (2d Dep't.1996) (where no significant possibility of an actual conflict of interest which bore a substantial relationship to the conduct of the defense shown, conviction affirmed); *People v. Medina*, 208 A.D.2d 974, 617 N.Y.S.2d

230 (3d Dep't.1994) (counsel's vigorous representation of defendant demonstrated that his conduct was not adversely affected by any limitations stemming from his prior representation of prosecution witness); *People v. Barber,* 180 A.D.2d 548, 580 N.Y.S.2d 274 (1st Dep't 1992) (where nothing in the trial record demonstrated that potential for conflict "actually operated" on conduct of defense, conviction affirmed); *People v. Reape,* 162 A.D.2d 634, 557 N.Y.S.2d 94 (1990) (because defendant failed to demonstrate that conflicting theories or defenses existed so that the potential conflict "actually operated," conviction was affirmed).

Given that there is no proof in this record to suggest, let alone demonstrate, that the potential for conflict alleged by Frazier "actually operated" on any aspect of his trial strategy or defense, it follows that counsel's failure to raise the conflict issue on appeal did not deny Frazier his Sixth Amendment right to the effective assistance of appellate counsel. *Compare Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) (ineffective assistance of appellate counsel established where counsel failed to raise double jeopardy claim that was a "sure winner"); *Mayo v. Henderson,* 13 F.3d at 534 (ineffective assistance of appellate counsel established because New York courts apply a *"per se* reversal rule to *Rosario* violations").

▮▮▮▮ *2. Merits under Federal Law:* Frazier fares no better had Boreanaz relied on federal conflict of interest precedent in appealing his conviction. A trial judge must "initiate an inquiry when it knows or reasonably should know of the possibility of a conflict of interest" involving defense counsel. *Strouse v. Leonardo,* 928 F.2d 548, 555 (2d Cir.1991). The inquiry permits the trial judge "to determine the precise nature of the conflict and how

to proceed, i.e. whether to disqualify counsel, obtain a waiver from the defendant pursuant to *Curcio,* [*United States v. Curcio,* 680 F.2d 881 (2d Cir.1982) ] or take no action." *United States v. Stantini,* 85 F.3d 9, 13 (2d Cir.), *cert. denied by Bisaccia v. United States,* 519 U.S. 1000, 117 S.Ct. 498, 136 L.Ed.2d 390 (1996). When a conflict is "entirely ignored" by the trial judge, reversal is "automatic." *United States v. Levy,* 25 F.3d 146, 153 (2d Cir. 1994). *See also Ciak v. United States,* 59 F.3d 296, 302 (2d Cir.1995) (automatic reversal rule applicable to habeas cases).

▮▮▮▮ Application of the automatic reversal rule, however, presumes the presence of a conflict of interest. The record here reveals only that at some point in time a member of defense counsel's law firm represented an unindicted co-conspirator (Latona) who was not going to be a witness at Frazier's trial. Though not the case here, even if Latona was being separately prosecuted for his role in the burglary, "[d]ual representation in separate but related proceedings, without more, does not trigger the inquiry obligation. There must be, in addition, a reasonable awareness of a potential conflict of interest." *United States v. Stantini,* 85 F.3d at 14 (trial counsel's dual representation of defendant and a co-conspirator in a separate but related trial did not give rise to duty to inquire). *See also Cuyler v. Sullivan,* 446 U.S. 335, 346–48, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (multiple representation at separate trials where there appeared to be no conflicting defense strategies, did not trigger inquiry obligation); *United States v. Aiello,* 814 F.2d 109, 113 (2d Cir.1987) (no duty to inquire when trial judge was aware of dual representation in separate proceedings and there was no indication of divergent interests or defenses).[4]

---

**4.** Assuming arguendo that there was a duty to inquire, the record indicates that when advised by Boreanaz of the Latona situation, the trial judge did conduct a inquiry sufficient to make the determination that so long as Lato-

na was not going to be a trial witness, no conflict of interest issue existed. Even if that determination was flawed, the "automatic reversal" rule is inapplicable to situations where the Court actually conducts a conflict

■■■■■ Defense counsel burdened with a conflict of interest may also deprive his client of his Sixth Amendment rights independent of any "duty to inquire" issue. Normally a defendant who claims ineffective assistance of counsel must show prejudice to prevail. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, when defense counsel labors under an actual as opposed to a potential conflict of interest, a presumption of prejudice applies. *Id.* at 692; *Stantini,* 85 F.3d at 15. An *actual* conflict of interests exists only if defense counsel actively represented conflicting interests *and* the conflict adversely affected the lawyer's performance. "To prove a lapse of representation, a defendant must 'demonstrate that some plausible alternative defense strategy or tactic might have been pursued' but was not and that 'the alternative defense was inherently in conflict with or not undertaken due to the attorneys other loyalties or interests.'" *Stantini,* 85 F.3d at 16 (quoting *Winkler v. Keane,* 7 F.3d 304, 309 (2d Cir.1993)). Moreover, "conflicts problems are more likely to arise in cases involving joint representation in a single proceeding rather than multiple representation in which the attorney represents different clients in different matters". *United States v. Gambino,* 864 F.2d 1064, 1070 (3d Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 566 (1989).

■■■■ These settled principles of federal conflict law buttress this Court's opinion that the failure of Boreanaz to raise the conflict issue on appeal did not deprive Frazier of his right to the effective assistance of appellate counsel. As set forth earlier, there is no evidence in this record that Boreanaz labored under an actual conflict of interest, that any legal or factual issue was ignored by Boreanaz at trial, or that there was any defense strategy or tactic that could have been but was not

pursued due to his law firm's relationship to Latona. Frazier's conjecture and unsupported speculation as to how Latona would have assisted his alibi defense is simply insufficient to merit relief. *United States v. Reed,* 179 F.3d 622, 625 (8th Cir.1999) ("abstract or hypothetical set of 'what ifs' does not satisfy a defendant's burden in proving an actual conflict of interest"); *Hornick v. United States,* 891 F.Supp. 72, 74 (N.D.N.Y.1995) ("simply because an attorney previously represented a possible co-conspirator or a potential witness creates no conflict in and of itself"). "The conflict must be real, not some attenuated hypothesis having little consequence to the adequacy of the representation." *United States v. Fahey,* 769 F.2d 829, 835 (1st Cir.1985). The logic behind Boreanaz's decision not to highlight Latona's participation in the burglary is not difficult to discern. Based on the present record, Latona would have been another witness who placed Frazier at the scene of the crime, a fact irreconcilable with Frazier's alibi defense. *See Stantini,* 85 F.3d at 18 (no conflict found where conceding the participation of other co-conspirators would have served only to support the government's account of the crime); *Gambino,* 864 F.2d at 1070–72 (defense counsel's failure to present a defense that another client was involved with the crime was not an actual conflict of interest).

Having failed to demonstrate an actual conflict of interest, Frazier's appellate arguments would have been limited to demonstrating a potential conflict and the concomitant burden of demonstrating prejudice. To meet this burden, Frazier would have to demonstrate that due to the errors committed by counsel, the defendant was deprived of a fair trial or a reliable result. He must show that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466

inquiry but reaches the erroneous conclusion that no conflict exists. *United States v. Kliti,* 156 F.3d 150, 153 (2d Cir.1998); *United*

*States v. Jiang,* 140 F.3d 124, 128 (2d Cir. 1998).

U.S. at 694, 104 S.Ct. 2052; *Winkler v. Keane,* 7 F.3d 304, 308 (2d Cir.1993). Assuming a potential conflict even existed, there is no evidence in the record to support a finding of actual prejudice.

In sum, given the weaknesses of Frazier's claim that a conflict existed under either state or federal precedent, Frazier is unable to demonstrate that "there was a reasonable probability that his [conflict of interest] claim would have been successful before the state's highest court." *Mayo v. Henderson,* 13 F.3d 528, 534 (2d Cir.1994). Thus, Boreanaz did not omit a "significant and obvious" issue while "pursuing issues that were clearly and significantly weaker." *Id.* at 533. Accordingly, Frazier's habeas petition alleging ineffective assistance of appellate counsel must be denied.

### Conclusion

For the foregoing reasons, Frazier's petition for a writ of habeas corpus is **denied** and the Clerk of the Court is directed to enter judgment in favor of respondent. SO ORDERED.